IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SNELL, ET AL.,           :     CIVIL ACTION
                                 :     NO. 02-3660
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
ROBERT DUFFY, ET AL.,            :
                                 :
          Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        JANUARY   , 2004


          Michael C. Snell ("plaintiff")[1] filed a complaint in
this case against Pennsylvania State Troopers Robert J. Duffy and
Jeffrey Wlock, and the Pennsylvania State Police, alleging
several causes of action arising from plaintiff's prosecution on
simple assault charges stemming from an incident which occurred
November 13, 1999.  Plaintiff's complaint is essentially based on
his allegations that Troopers Duffy and Wlock did not have
probable cause to request the issuance of a citation (which led
to the plaintiff's prosecution) and that the affidavit of
probable cause that defendants filed to obtain the citation from
the District Justice contained false statements and omitted
relevant information.

_____

          [1]Plaintiff has brought suit on his own behalf and on behalf
of his minor son Woodrow Snell. For the sake of simplicity, the
court will refer only to plaintiff Michael Snell when referring
to the plaintiff in this matter.

Under the undisputed facts of this case, the court finds that (1) plaintiff has failed to produce sufficient evidence establishing malice, a required element of a malicious prosecution claim; and that (2) no reasonable jury could find that plaintiff lacked probable cause to request a citation against Michael Snell.  Furthermore, plaintiff has failed to produce any evidence that Trooper Duffy made false statements of material fact in the affidavit of probable cause or that, with reckless disregard for the truth, he omitted any material facts therein.

Because the court finds that plaintiff has not provided sufficient evidence with which a reasonable jury could find that his constitutional rights have been violated, summary judgment in favor of the defendants as to Counts I and IV of plaintiff's complaint is appropriate.

I.    BACKGROUND

    A.    The Underlying Incident[2]

The underlying criminal prosecution of plaintiff Michael Snell arose from an incident that allegedly occurred on

_____

[2] Although plaintiff denies that he engaged in the conduct for which was charged (i.e. pointing a gun at his neighbor's children), all relevant material facts occurring subsequent to the alleged incident are generally undisputed.

November 13, 1999.   On that day, Michael Snell and his son, Woodrow, went hunting with a .22 caliber rifle (a ".22") and a scope in a field behind their house in Coatesville, Pennsylvania. As they were walking by their neighbors' backyard, they saw their neighbors' three young boys who were throwing rocks and cursing at them.   According to plaintiff, he and his son continued walking and went hunting for about an hour.

Later, Pennsylvania State Trooper Duffy received a call on his police radio regarding a report that an individual had pointed a gun at three children.   Both Troopers Duffy and Wlock responded to the call, which came from the home of the Snells' neighbors.   At the scene, Trooper Duffy interviewed the alleged victims, Tyler and Brian Brady and Zachary Buck, in the presence of their parents, Mrs. Brady and Mrs. Buck.   The children alleged that Michael Snell had pointed a gun at them on three separate occasions and screamed at them.[3]   Duffy inspected the area where the alleged incident took place, but found no physical evidence to support the boys' claim.

Duffy then interviewed Michael Snell.   During the interview, Snell confirmed that he owned a ".22" and that earlier that afternoon he and his son had gone hunting in a field behind the Bradys' home, taking with them that particular gun.    Snell

_____

[3] Duffy also interviewed Mrs. Buck and Mrs. Brady apart from the children.

-3-

also confirmed that he had seen the Brady and Buck children in the backyard as he and his son walked by.  Although Duffy did not reveal the nature of the incident he was investigating, Snell said during the interview, "Are you here because somebody pointed an unloaded and unbolted gun at these children."[4]  (Def. Exh. 1 at 21.)

Trooper Duffy then asked plaintiff for the gun.  Snell complied by going into his shed to get the gun.  Snell, however, would not allow Duffy to enter the shed without a warrant. Despite Snell's refusal to consent, Trooper Wlock entered the shed behind Snell and allegedly pushed Woodrow Snell aside to take the weapon from the plaintiff.[5]  Wlock left the shed with the gun and turned it over to Duffy.  Troopers Duffy and Wlock then left the scene with Snell's rifle.

Based on the interview of the alleged victims and the plaintiff's voluntary statements to him, Trooper Duffy requested that the District Justice issue a citation for Michael Snell to appear in court to answer the charge that he pointed a gun at the children. Upon receiving the citation, Snell appeared for a

---

[4] Prior to that statement, Trooper Duffy did tell Snell that the reason he was at the Snell's home was to investigate an incident concerning the neighbors' children and Duffy had asked Snell about his ownership of a gun.

[5] Because plaintiff moved to dismiss plaintiff's claim for battery on the basis of sovereign immunity (and the court has yet to rule on that motion), defendant Wlock has yet to admit or deny the allegation that he pushed Woodrow Snell.

hearing in front of District Justice Susan Welsh in the
Magisterial District Court of Delaware County on December 9,
1999.

At the hearing Tyler Brady testified that Michael Snell
pointed a gun at himself, Brian Brady and Zachary Buck.  The
District Justice determined that there was sufficient evidence to
proceed with the charges of simple assault and harassment and set
bail in the amount of $5,000.  Snell was also told that he was
not allowed to leave the state (other than for work) without
calling the Chester County Bail Office.

Snell subsequently went to trial on the charges and a
jury returned a verdict of not guilty.


B.    <u>The Instant Action</u>

Following his acquittal at trial, the plaintiff filed
the instant action against Pennsylvania State Troopers Robert
Duffy and Jeffrey Wlock and the Pennsylvania State Police
("PSP").  The complaint contained allegations of:  malicious
prosecution (Count I), false arrest (Count II), battery (Count
III)(against Trooper Wlock only), reckless and/or intentional
omission of material exculpatory information from (and inclusion
of materially false information in) an affidavit of probable
cause (count IV), failure to train or supervise (count V)(against

-5-

the Pennsylvania State Police), and punitive damages (count VI).[6]

In response to plaintiff's complaint, the Pennsylvania State Police filed a motion to dismiss, seeking dismissal of all of plaintiff's claims against it based on sovereign immunity. Finding that plaintiff's state law claim against PSP for failure to train its officers was barred by the Eleventh Amendment, the court dismissed PSP from the suit.

Troopers Wlock and Duffy also filed a motion to dismiss seeking dismissal of Counts II and III of plaintiff's complaint. They argued that Count II was barred by the statute of limitations and, similar to the argument made by PSP, that plaintiff's state law claim for battery against Wlock was barred by sovereign immunity.  The court agreed that the statute of limitations had run on plaintiff's false arrest claim but reserved judgment as to whether Wlock was immune to suit on the battery claim.[7]

The parties then filed cross-motions for summary judgment.  Troopers Duffy and Wlock have moved for summary judgment on all of plaintiff's remaining claims against them

---

[6] Since there is no separate cause of action for punitive damages, this count should be dismissed and defendant's motion for summary judgment with respect to this count is denied as moot.

[7] Defendant Wlock reasserts his argument that count III should be dismissed on the basis of sovereign immunity in defendants' motion for summary judgment.

(i.e., malicious prosecution, battery, and reckless and/or
intentional omission of material exculpatory evidence from, and
inclusion of materially false information in, an affidavit of
probably cause).  Plaintiff has moved for partial summary
judgment on his malicious prosecution claim.[8]

II.  DISCUSSION

    A.  <u>Standard for Summary Judgment</u>

        Federal Rule of Civil Procedure 56(c) is designed to
secure a just, speedy and inexpensive determination of cases
before they proceed to trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 327 (1986).  When confronted with cross-motions for summary
judgment "[t]he court must rule on each party's motion on an
individual and separate basis, determining, for each side,
whether a judgment may be entered in accordance with the Rule 56
standard."  10A Charles A. Wright, Arthur R. Miller & Mary Kane,
Federal Practice and Procedure § 2720 (1998).  Thus, with respect
to each party, summary judgment is proper when the pleadings,

---

    [8] Plaintiff's motion for partial summary judgment states
that plaintiff is seeking summary judgment on his malicious
prosecution claim only.  However, in his brief, plaintiff makes
arguments concerning Count IV of his complaint as well.  The fact
that plaintiff's brief addresses the issues in Counts I and IV in
a commingled fashion is not surprising since these two counts are
inextricably linked.  Because the court finds that the defendant
is entitled to summary judgment with respect to Counts I and IV,
any confusion regarding the precise boundaries of plaintiff's
motion for partial summary judgment is inapposite.

-7-

depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986). An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party. Id. at 251-52. In making this determination, a court must draw all reasonable inferences in favor of the non-movant. See Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983), cert. denied, 465 U.S. 1091 (1984). Thus, summary judgment should be granted only if no reasonable trier of fact could find for the non-moving party. See id.; Radich v. Goode, 886 F.2d 1391, 1395 (3d Cir. 1989).

B.    Plaintiff's Section 1983 Claim for Malicious
      Prosecution[9]

        To establish a claim under Section 1983, the plaintiff
must show that Troopers Duffy and Wlock, acting under color of
state law, deprived him of a right or privilege secured by the
Constitution or laws of the United States.[10]  Williams v. Borough

---

[9] In their response to plaintiff's motion for partial
summary judgment, defendants argue, for the first time, that
Count I of plaintiff's complaint merely states a claim for a
violation of the state law tort of malicious prosecution, rather
than a claim for violation of a constitutional right under
Section 1983.  This stance seems disingenuous since in
defendant's own motion for summary judgment (filed earlier than
plaintiff's partial motion), defendant addressed that same count
as a section 1983 claim for malicious prosecution in violation of
the Fourth Amendment.

        Looking closely at plaintiff's complaint, Count I of
does not specifically state that plaintiff is seeking relief for
malicious prosecution under Section 1983.  However, because the
defendant has assumed that Count I states a claim for malicious
prosecution in violation of the Constitution and the plaintiff
appears to argue in its reply to defendant's summary judgment
motion that Count I does state a constitutional claim, the court
will assume that Count I seeks relief for a constitutional claim,
not merely a common law tort.

[10] To recover under Section 1983, plaintiff must plead and
prove two elements.  First, he must establish that there was a
deprivation of the "rights, privileges, or immunities secured by
the Constitution and laws" of the United States. Baker v.
McCollan, 443 U.S. 137, 140 (1970).  Because Section 1983 is not
in itself a source of substantive federal rights, see Albright,
510 U.S. 266, 271 (1994), in order to state a cognizable claim
under Section 1983, a plaintiff must allege a violation of a
particular federal right.  See Heck v. Humphrey, 512 U.S. 477,
483 (1994) (stating that section 1983 creates "a species of tort
liability" for redressing deprivations of federal constitutional
rights).  The constitutional basis for plaintiff's malicious
prosecution claim is the Fourth Amendment.

of West Chester, 891 F.2d 458, 464 (3d Cir. 1989).  Plaintiff
claims, and the defendants do not contest, that at all relevant
times the defendants were acting under the color of law.  What is
at issue, therefore, is whether Snell was deprived of a
constitutional right.

Plaintiff essentially argues that his constitutional
rights were violated because he was restrained in his liberty (by
being restricted from interstate travel, except for work, unless
he received prior permission) and because he was forced to defend
himself in suit based on charges filed without probable cause.
In other words, plaintiff argues that his Fourth Amendment rights
against illegal search and seizure were violated.  To maintain a
Section 1983 action for malicious prosecution based upon the
Fourth Amendment, plaintiff must prove the basic elements of the
common law tort of malicious prosecution, namely that: "(1) the
defendants initiated a criminal proceeding; (2) the criminal
proceeding ended in plaintiff's favor; (3) the proceeding was
initiated without probable cause; and (4) the defendants acted
maliciously or for a purpose other than bringing the plaintiff to
justice."  Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002).
In addition, in order to establish a deprivation of

_____

Second, to recover under Section 1983, plaintiff must plead
and prove that the defendants deprived him of his constitutional
rights "under color of any statute, ordinance, regulation,
custom, or usage, of any State or Territory." Monroe v. Pape, 365
U.S. 167, 171-88, (1961).

"constitutional right," the plaintiff must show "some deprivation of liberty consistent with the concept of 'seizure.'"  <u>Gallo v. City of Philadelphia</u>, 161 F. 3d 217, 222 (3d Cir. 1998) (quoting <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d Cir. 1995)).  The seizure must be the consequence of legal proceeding, such as an indictment.[11]  <u>See id</u>.

    1.  <u>Malice</u>

As an initial matter, although plaintiff alleges in his complaint that Troopers Duffy and Wlock "acted maliciously or for purposes other than the interest of justice," the court finds that there has been insufficient evidence produced by the plaintiff from which a reasonable jury could conclude that defendants acted with malice towards plaintiff.  "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself

---

[11] In defendants' motion for summary judgment, the defendants focus first on whether plaintiff was "seized" under the meaning of the Fourth Amendment, since in the absence of a "seizure", plaintiff's malicious prosecution claim under section 1983 must fail.  In light of the court's finding that plaintiff has failed to prove of the existence of two of the common law elements of a malicious prosecution claim, namely, malice and want of probable cause, the court need not address this issue.  However, applying the reasoning of the Third Circuit's decision in <u>Gallo</u>, in which the court found that a plaintiff who was required to post bail, attend all court hearings, contact pretrial services on a weekly basis, and <u>who was prohibited from traveling outside of New Jersey and Pennsylvania</u> was seized in the constitutional sense, it is likely that Snell has established that he was "seized."

in the propriety of the prosecution, or its use for an extraneous improper purpose." <u>Wagner v. Waitlevertch</u>, 774 A.2d 1247, 1253 (Pa. Super. 2001). Plaintiff has produced no evidence that the prosecution of plaintiff was premised on anything other than a belief that a crime had been committed by plaintiff, or that the defendants, in any way, doubted the propriety of the prosecution.[12]

However, to the extent that malice can be inferred from the absence of probable cause, <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d Cir. 1993); <u>see</u> <u>also</u> <u>Curley v. Automobile Finance Co.</u>, 23 A.2d 48, 51 (Pa. 1941)(holding that want of probable cause is <u>evidence</u> of malice but not conclusory of that issue), the court must further address whether plaintiff has produced evidence from

---

[12] Plaintiff argues that the existence of malice can be established in this case by defendant's: (1) want of probable cause, <u>see</u> <u>Lippay v. Christos</u>, 996 F.2d 1490 (3d Cir. 1993), (2) acting in "undue haste," <u>see</u> <u>Hugee v. Pa. Railroad Co.</u>, 101 A.2d 740, 743 (Pa. 1954), and (3) destruction of exculpatory evidence. Putting aside the fact that probable cause is not lacking in this case (as discussed <u>infra</u>), the court finds that there is insufficient evidence to support a finding that defendants performed their duties with undue haste or destroyed exculpatory evidence. Plaintiff has offered no proof that the defendants acted in undue haste other than to point out there were no exigent circumstances that precluded Trooper Duffy from performing a longer investigation than he did. And, despite plaintiff's statements to the contrary, the destruction of Trooper Duffy's notes, which may or may not have contained a statement from Mrs. Snell that she witnessed the incident and that her husband did not point a gun at the alleged victims, once Duffy's formal investigation report was completed, does not constitute destruction of exculpatory evidence. Any statements by Mrs. Snell as to whether she witnessed the incident were always available to the plaintiff.

which a jury could find that the defendants requested the issuance of a citation against plaintiff without probable cause.

### 2.  Want of Probable Cause

Plaintiff has also failed to produce evidence from which a reasonable fact-finder could conclude that defendants lacked probable cause to request the issuance of the citation against plaintiff.[13]  Probable cause is "defined in terms of [objective] facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "A court must look at the "totality of the circumstances" and use a "common sense" approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

Although, generally, the existence of probable cause in a Section 1983 action is a question for the trier of fact,[14] "a

---

[13] The plaintiff has the burden to prove lack of probable cause in malicious prosecution cases.  See Martinez v. E.J. Korvette, Inc., 477 F.2d 1014, 1016 (3d Cir. 1973) (construing Pennsylvania law in suit alleging malicious prosecution and holding that, under state law, "[t]he plaintiff has the burden of proving lack of probable cause).

[14] This is particularly true when there are credibility conflicts.  See Sharrar, 128 F.3d at 818.  Despite plaintiff's contentions to the contrary, no credibility issues exist in this case with respect to the determination of probable cause since, as discussed infra, the voluntary admissions by plaintiff corroborated the statements made by the alleged victims.

district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed [in the light] most favorabl[e] to the [p]laintiff,'" could not support a contrary finding, and the court "may enter summary judgment accordingly." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788-89 (3d Cir. 2000) (citing Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998); Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997). A determination of probable cause should be left for the jury "only if there is sufficient evidence whereby a jury could reasonably find that the police officers did not have probable cause." Sharrar, 128 F.3d at 818.

Viewing the undisputed facts in this case in the light most favorable to plaintiff, and under the "totality of circumstances," the court finds that there was probable cause to request a citation against Michael Snell. Upon arriving at the scene of the call, Trooper Duffy solicited statements from the three children, Tyler and Brian Brady, and Zachary Buck, that: On the afternoon of November 11, 1999, as they were playing in the backyard of their home, they saw Michael Snell and his son, Woodrow Snell walking in an open field behind the backyard of their home. Mr. Snell was carrying what the children believed was a handgun and Woodrow Snell was carrying a "long gun." As the Snells were walking past the them, Mr. Snell took the long

gun from Woodrow, turned toward the children and pointed a gun at them.  Mr. Snell pointed the gun at them on two additional occasions.[15]  Woodrow Snell did not turn toward the children during the entire incident.  After the gun was pointed at them, the children then turned and ran into their home because they believed that Mr. Snell was going to shoot them.  Trooper Duffy made a determination that the children's statements were credible (see Def. Exh.2, Dep. of T. Duffy at 43).  He also took statements from the children's mothers (Mrs. Brady and Mrs. Buck) who related that both families had had problems with Mr. Snell in the past and that the hostilities had been escalating.

That same day, Trooper Duffy interviewed the plaintiff. Snell admitted that he had gone hunting earlier that afternoon in the area of the alleged incident.  He stated that the children had cursed at him as he and his son walked past the area.  Snell also admitted that he had been carrying a scope and his son had been carrying a .22 rifle.[16]  Furthermore, although Duffy had not informed Snell of the nature of the incident or complaint that he was investigating, Snell stated that he could not believe that he was being asked about pointing an unloaded gun at the children,

---

[15] One of the victims recalled that, on one of the occasions that Mr. Snell turned towards them pointing the gun, he made a loud scream that resembled "Aaah!"

[16] Snell stated that the rifle was unloaded and that the bolt had been removed.  (Def's Exh. 1, Dep. of M. Snell at 16).

that he considered it to be harassment, and that there was going to be a lawsuit over this.   Trooper Duffy also noted that over the course of Snell's interview he became extremely loud, difficult and defensive.  At the end of the interview, Snell voluntarily retrieved the rifle from an outside garage when Trooper Duffy told him he would need to take it as evidence.

Based upon Snell's voluntary admissions and the statements made by the alleged victims (the Brady and Buck children), Trooper Duffy concluded that charges of simple assault, recklessly endangering another person, and harassment were warranted (based on his belief that there was probable cause to believe that plaintiff pointed a .22 caliber rifle at the three children and that his actions caused the children to be in fear of serious bodily injury).  The court agrees with Trooper Duffy's determination.

Additionally, after the citation was issued, District Justice Welsh found, after hearing the testimony of one of the alleged victims, Tyler Brady, and arguments by counsel, that there was sufficient evidence to "bind over" plaintiff's case to the Court of Common Pleas for trial (see Tr. at 50, Def. Exh. 4). While not conclusive evidence of the existence of probable cause, the decision of the district justice to hold over Snell for a trial on the charges constitutes "weighty evidence" that Duffy had probable cause to request the issuance of the citation.  See

<u>Tarlecki v. Mercy Fitzgerald Hospital</u>, No. 01-CV-1347, 2002 WL 1565568, *3 (E.D. Pa. July 15, 2002)(Robreno, J.); <u>Cosmas v. Bloomingdale's Bros. Inc.</u>, 660 A.2d 83, 87 (Pa. Super. 1995).

In his motion for summary judgment, plaintiff essentially makes three arguments as to why the defendants lacked probable cause to request the citation. First, he argues that probable cause was negated because the circumstances of this case raised doubts as to the veracity of the witnesses or their credibility.[17] Second, plaintiff argues that probable cause

_____

[17] This argument is based on the fact that further investigation may have revealed that, not only did the alleged victims in this case have a motive to lie about the incident in question because of the extensive history of hostilities between the two families, but also that the children have a history of being untruthful. (Dep. of M. Snell at 57.)

Normally, "[w]hen an officer has received his information from some person--normally the putative victim or an eyewitness--who it seems reasonable to believe is telling the truth, he has probable cause." <u>Cronin v. West Whiteland Twp</u>., 994 F. Supp. 595, 601 (E.D. Pa. 1998)(Robreno, J.); <u>see also Sharrar</u> 128 F.3d at 818 (stating that "[w]hen a police officer receives a reliable identification by a victim, he has probable cause"). Plaintiff argues that the alleged victims should not have been believed because there were ample reasons to doubt their truthfulness. However, none of the information produced by plaintiff in discovery (other than hostilities between the Snells and the Brady and Buck families) was known to Trooper Duffy at the time he took the children's statements and, in Duffy's opinion, it appeared that the children were telling the truth. Furthermore, the children's statements were corroborated by the plaintiff's voluntary admission that Duffy was investigating him for pointing a gun at the children even though Duffy had not stated or implied anything of the sort. Under those circumstances, it was reasonable for Duffy to conclude there was probable cause to believe that the offense had been committed by Snell.

cannot be based solely on the testimony of minors.[18]  Third, plaintiff argues that the police should have interviewed and used the statements of known witnesses, Mrs. Snell and Woodrow Snell, in their determination of probable cause.[19]  A closer reading of the plaintiff's argument reveals that plaintiff is essentially contending that Duffy lacked the requisite probable cause to request the citation because his investigation was not thorough. According to plaintiff, had Duffy conducted a more thorough investigation, the information he obtained would have undermined the credibility of the alleged victims and hence materially influenced his finding of probable cause.  The court disagrees.

        Contrary to plaintiff's argument, the law does not require the police to conduct a "thorough" investigation, leaving

---

[18] Plaintiffs have cited no case law (and, in particular, no case law from this circuit) that supports the blanket proposition that the testimony of minors cannot be the sole basis of probable cause.  The cases that he does cite, <u>Wrubel v. Bouchard</u>, 200 F. Supp. 2d 762 (E.D. Mich. 2002), <u>Marx v. Gumbinner</u>, 905 F.2d 1503 (11th Cir. 1990), and <u>Kerr v. Lyford</u>, 171 F.3d 330 (5th Cir. 1999) involve child identifications of perpetrators in sexual abuse cases under circumstances drastically different than the case at bar.  In any event, because Duffy relied on Snell's own voluntary admission, as well as the statements of the minor children, to find probable cause to request the issuance of the citation, additional corroboration for the children's accusations was present in this case.

[19] Trooper Duffy stated in his deposition that he did not consider the statements of Mrs. Snell or interview Woodrow Snell because they were family members of the accused, plaintiff Michael Snell.  The plaintiff's above argument essentially attacks Duffy's assessment that Mrs. Snell and Woodrow Snell were biased witnesses.

no stone unturned.  Such a heightened burden would convert a preliminary investigation into a full-fledged inquisition. Rather, the law commands that "once a law enforcement officer has sufficient evidence within his knowledge to establish probable cause, no further investigation is required."  See Dintino v. Echols, 243 F. Supp. 2d 255, 264 (E.D. Pa. 2003)(Robreno J.). Accord Vazquez v. Rossnage, 31 Fed. Appx. 778, 2002 WL 480963, at *2 (3d Cir. March 29, 2002) ("Once [the police officer] had established that there was sufficient probable cause to arrest [plaintiff], there was no need for additional investigations."); Merkle, 211 F.3d at 790 (stating that a police officer need not undertake "an exhaustive investigation in order to validate the probable cause that, in his mind, already exist[s]"); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").  Thus, once Duffy determined that there was probable cause to request a citation against plaintiff for simple assault, he had no duty to "exhaust every possible investigatory avenue" or "to negate every possible theory that exculpated the plaintiff."  See Dintino, 243 F. Supp. 2d at 265.  Furthermore, "absent evidence of wrongdoing or bad faith, . . .  it is not the province of the court to second-guess the investigatory

-19-

techniques used and decisions made by law enforcement officials."[20]  Id. at 265-66.


C.  Plaintiff's Claim Concerning the Affidavit of Probable
    Cause (Count IV)[21]

        Count IV of plaintiff's complaint alleges that the defendants "intentionally or recklessly omitted from the warrant or affidavit of probable cause material exculpatory information" and included "materially false information critical to the determination of probable cause" from that affidavit.  While plaintiff's claim in Count I that Duffy lacked probable cause to request the issuance of a citation against him required the court to test the legal sufficiency of Duffy's request for a citation (and/or his affidavit of probable cause), this latter claim challenges the veracity of the Duffy's request for a citation.  See Dintino, 243 F. Supp. 2d at 263. ("[C]hallenges to an arresting officer's determination of probable cause, when an arrest is made pursuant to an arrest warrant issued by an independent magistrate, involve not only the legal sufficiency of

_____

[20] Plaintiff has also moved for summary judgment with respect to Count I of his complaint.  For the same reasons that the defendants are entitled to summary judgment on this count, the court will deny plaintiff's motion.

[21] Defendants' motion for summary judgment seeks judgment entered in its favor as to this count but does not address this count in their brief.  On the other hand, it is unclear whether plaintiff's motion for partial summary judgment seeks judgment entered in plaintiff's favor on this count.

the affidavit . . . , but also the veracity of the affiant.").
To challenge Duffy's veracity, the plaintiff must show that
Trooper Duffy: "1) knowingly and deliberately, or with reckless
disregard for the truth, made false statements or omissions in
his affidavit of probable cause that create a falsehood in [his
request for an issuance of a warrant]; and 2) such statements or
omissions are material to the finding of probable cause."
Merkle, 211 F.3d at 789.

Plaintiff alleges that Trooper Duffy made one false
statement.  Plaintiff argues that, on the Police Initial Incident
Report (Pl.'s Exh. 16)[22] filed by Duffy, he falsely stated that
he canvassed the neighborhood.  Since, at his deposition, Duffy
admitted that he did not canvass the neighborhood for witnesses,
plaintiff argues that Duffy's misstatement in the affidavit
amounted to a false statement.  However, plaintiff misreads the
report.  On the Incident Report, Duffy checked the box on the
bottom of the form indicating that he had not canvassed the
neighborhood.  Therefore, plaintiff's reliance on this document
as an indication of a false statement is misplaced.[23]

_____

[22] Plaintiff argues that this form was used to support
Duffy's affidavit for probable cause.  (See Plaintiff's motion
for partial summary judgment at 45)

[23] Upon closer inspection, it appears that plaintiff may have
misstated his argument.  Indeed, Trooper Duffy did check the box
on the bottom of the form indicating that the scene of the
incident was checked for witnesses (a different box than that
relating to the neighborhood having been canvassed).  However,

Plaintiff further alleges that Duffy's affidavit failed to include any statements by Mrs. Snell that she witnessed the incident and that her husband did not point a gun at the neighbors' children.  In his deposition, Trooper Duffy stated that he did not remember what, if anything, Mrs. Snell said to him that day and that any statements she did make were not included in the incident report because she was the wife of the accused and, thus, a biased witness.  Even assuming that the exculpating statement was made by Mrs. Snell, and that the statement was knowingly and deliberately withheld by Duffy, no reasonable jury could find that such a statement would have been "material to the finding of probable cause."  See Merkle, 211 F.3d at 789.  This is so because Mrs. Snell's statement, if believed, would not have been sufficient to nullify the force of the children's incriminating statements and plaintiff's own admission, such that the final calculus of probable cause would have been different.  To put it succinctly, including the statement by Mrs. Snell in the Duffy affidavit would not have resulted in finding that there was no probable cause.  For those

_____

there is no evidence to suggest that this is a false statement. Plaintiff may argue that this statement is inaccurate because Duffy admitted that he did not inquire as to whether Woodrow Snell witnessed the incident.  However, Duffy stated that he did not ascertain whether Woodrow was a witness to the incident because he discounted Woodrow Snell's testimony as biased (since he was not only the accused's family member but also a party to the alleged incident).

reasons, the court concludes that no rational fact-finder could find that the omission of Mrs. Snell's statement in the affidavit of probable cause was a material omission.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment as to Counts I and IV is granted and plaintiff's motion for partial summary judgment is denied.[24]

An appropriate order follows.

---

[24] The court shall address defendant Wlock's motion for summary judgment with respect to Count III of plaintiff's complaint after the submission of a supplemental memorandum by defendant Wlock addressing plaintiff's contention that he is entitled to relief for the constitutional tort of excessive force with respect to that count.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SNELL, ET AL.,            :     CIVIL ACTION
                                  :     NO. 02-3660
          Plaintiffs,             :
                                  :
     v.                           :
                                  :
ROBERT DUFFY, ET AL.,             :
                                  :
          Defendants.             :

ORDER

**AND NOW**, this __th day of **January, 2004,** it is hereby
**ORDERED** that defendant's motion for summary judgment (doc. no. 24) as
to Counts I and IV of plaintiff's complaint is **GRANTED.**[1]  Plaintiff's
motion for partial summary judgment (doc. no. 27) is **DENIED.**

     **IT IS FURTHER ORDERED** that Count VI of plaintiff's
complaint is **DISMISSED without prejudice.**[2]

     **IT IS FURTHER ORDERED** that Defendant Wlock shall have ten
(10) days to file a supplemental memorandum addressing plaintiff's
contention that he is entitled to relief for the constitutional tort
of excessive force with respect to Count III of his complaint.


     **AND IT IS SO ORDERED.**

                                   _____
                                   **EDUARDO C. ROBRENO, J.**

_____

[1] Counts II and V of plaintiff's complaint were previously
dismissed by order of the court dated November 21, 2002.

[2] Because there is no separate cause of action for punitive
damages, Count VI of plaintiff's complaint should be dismissed.