IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SNELL AND WOODROW SNELL     :     CIVIL ACTION

                    Plaintiffs      :

             V.                     :

ROBERT J. DUFFY ET AL               :

                    Defendants      :     NO.  02-3660

**DEFENDANT WLOCK'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF WOODROW SNELL'S MOTION FOR
SUMMARY JUDGEMENT**

## I.    STATEMENT OF THE CASE

Plaintiffs Michael C. Snell and his son, Woodrow Snell ("Snells"), filed this federal action against the Pennsylvania State Police, Pennsylvania State Trooper Robert J. Duffy and Pennsylvania State Trooper Jeffrey Wlock.  Michael Snell alleged that Duffy and Wlock arrested him on November 15, 1999 for simple assault, recklessly endangering another person and harassment without a warrant and without probable cause.  He further alleged that he was subsequently prosecuted on the charges and was found not guilty by a jury.  He alleges that his arrest and subsequent prosecution violated his constitutional rights.

Woodrow Snell alleged in paragraph 17 of the complaint that Wlock pushed him unnecessarily causing him to strike his leg on an exposed screw of an ice bin.  He claims that such action amounted to a battery (Count III) and a violation of his constitutional rights.

Duffy and Wlock moved to dismiss Michael Snell's claim that he was arrested without probable cause in violation of his constitutional rights on November 13, 1999[1].  On November 21, 2002, this Court granted their motion and dismiss Michael Snell's claim that he was arrested without probable cause on November 13, 1999[2].

Duffy and Wlock then moved for summary judgment on Michael Snell's claim that he was prosecuted without probable cause in violation of his constitutional rights.  In support of their motion, they relied upon the deposition testimony of Michael Snell dated January 30, 2003, (Ex. 1); the deposition testimony of Robert Duffy dated January 30, 2003 (Ex. 2); the deposition testimony of Brian Brady (Ex. 3) and a memorandum of law.  The Snells filed a response in which for the first time they alleged that the alleged push by Wlock of Woodrow Snell violated his constitutional rights.  Defendant Wlock's responded by asking this Court for permission to file a reply brief to respond to that claim.  On January 7, 2004, this Court granted defendants' Motion for Summary Judgment with regard to Michael Snell's claim.

---

[1]The Pennsylvania State Police also moved to dismiss the complaint filed against it.  On November 21, 2002, the Court granted its motion and dismissed the Pennsylvania State Police from this case.

[2]Duffy and Wlock also moved to dismiss the Snells' state law claims including Woodrow Snell's battery claim.  As of the filing of this motion the Court has not ruled on that motion.  To the extent it is necessary to reargue that issue, Duffy and Wlock incorporate by reference their sovereign immunity argument set forth in their motion to dismiss.

This Court also gave defendant Wlock ten days to file a supplemental memorandum regarding Woodrow Snell's claim that the alleged push by Wlock of Woodrow Snell violated his constitutional rights.  This memorandum of law is Wlock's supplemental response to Woodrow Snell's claim that the push by Wlock violated his constitutional right.

## II.  STATEMENT OF THE FACTS[3]

On November 13, 1999, Michael Snell and his son, Woodrow Snell, went hunting in a field behind their house in Coatesville, Pennsylvania. Ex. 1, p. 7.  Woodrow Snell was carrying a gun. Id. Michael Snell was carrying a scope. Id.  As they were walking by their neighbor's house, they saw three young boys who were cursing and throwing rocks at them. Id. p. 7.  They continued walking. Id.  They went hunting for about an hour. Id. p. 10.

Later, Duffy received a call on his police radio that an individual pointed a firearm at three children. Ex. 2, p. 9. Duffy responded to the call, which was at the neighbors of the Snells. Id. p. 12.

At the scene, Duffy interviewed the three children who informed him that Michael Snell pointed a gun at them three different times and yelled, "Aah". Ex. 3, pp 6, 15, 16.  Duffy also inspected the area where the alleged incident took place.

---

[3] All reference to Exhibits are to the Exhibits to Defendants' Motion for Summary Judgment which this Court and plaintiff's counsel already have been provided.

Id. p. 18.

Duffy interviewed Michael Snell. Id. p. 14.  During the interview, Duffy did not inform Michael Snell why he was there. Id.  Duffy asked Snell if he owned a "22". Id. Snell said "yes". Id.  During the interview, Michael Snell told Duffy that he and his son had gone hunting that afternoon in a field that was located behind the Brady's home and that his son was carrying a rifle and that he was carrying a scope. Id.  Snell informed Duffy that he saw the children in the back yard and they were throwing rocks at him and his son as they were walking by the yard.. Id. Snell also said to Duffy during the interview that "Are you here because somebody pointed a unloaded and unbolted gun at these children". Ex. 2, p 18.

Duffy asked Michael Snell for the gun. Ex. 1, p. 15.  Snell complied by going into his shed to get the gun. Id.  p. 16. Snell, however, would not allow Duffy to enter the shed. Id. p.15. Wlock, however, did enter the shed without Michael Snell's permission. Id.  While in the shed, Wlock allegedly pushed Woodrow Snell aside into an ice ben and took the gun from Michael Snell.  Id. p.16.  Wlock left the shed with the gun.  Ex. 1, p 21.

III.  ARGUMENT

   A. STANDARD APPLICABLE TO A MOTION FOR SUMMARY JUDGEMENT

       Pursuant to Fed. R. Civ. P. 56(c), a motion for summary
judgment is properly granted by the trial court if, after a
review of the evidentiary material in the record, there is no
genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  Celotex v. Catrett, 477
U.S. 317, 323 (1986).  Rule 56(c) mandates the entry of summary
judgment against a non moving party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case and on which that party will bear the burden of
proof at trial.

       An issue is only "genuine" if there is sufficient evidence
from which a reasonable jury could find for the non moving party.
Anderson v Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The
plaintiff must set forth specific facts showing a genuine issue
for trial.  Celotex, 477 U.S. at 323.  If the evidence of the non
moving party is "merely colorable" or is "not significantly
probative," summary judgment should be granted.   Anderson, 477
U.S. at 255.  A non-moving party may not successfully oppose a
summary judgment motion by simply replacing "conclusory
allegations of the complaint..... with conclusory allegations of
an affidavit."  Lujan v. National Wildlife Federation, 497 U.S.
871 (1990).

B.  **WOODROW SNELL IS UNABLE TO ESTABLISH A CONSTITUTIONAL CLAIM AGAINST WLOCK**

For the first time in their response to Defendants' Motion for Summary Judgment, Woodrow Snell claimed that defendant Wlock violated his constitutional rights when he allegedly pushed him out of the way to take the gun away from his father.  He claims that Wlock pushed him into an ice bin which had an exposed screw which cut his leg.

Woodrow Snell does not identify which constitutional right Wlock violated when Wlock allegedly pushed him.  In fact, his complaint and amended complaint identified the claim as one for battery and not a claim for violation of his constructional rights..  There are, however, only two possible amendments that Wlock could have violated if, in fact, he pushed Woodrow Snell out of the way to obtain the weapon from Michael Snell : the Fourth Amendment or the Fourteenth Amendment.

1.  **The Fourth Amendment**

The Fourth Amendment protects citizens from unreasonable use of force during an arrest, investigation, stop or other "seizure".  Graham v. Connor, 490 U.S. 386, 395 (1985).  A person is "seized" for fourth amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement.  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).

Here, there is no evidence in the record which shows that Woodrow Snell was "seized" within the meaning of the Fourth Amendment. Even if Wlock did push Snell as alleged, it could not violate the Fourth Amendment because Snell was not seized by Wlock. Accordingly, Wlock is entitled to summary judgment on Woodrow Snell's claim that the alleged push by Wlock violated his Fourth Amendment right.

### 2.    Fourteenth Amendment Claim

In order to establish that Wlock violated his Fourteenth Amendment right, Woodrow Snell must show that Wlock's conduct "shocks the conscience". <u>County of Sacramento v. Lewis</u>, 533 U.S. 833, 846 (1988).

Here, based upon the record before this Court, no reasonable jury could find that Wlock's alleged push of Woodrow Snell into the ice bin to obtain a weapon would "shock the conscience". Wlock allegedly pushed Woodrow Snell as he went to secure the weapon from Michael Snell, who at the time was a possible crime suspect. Pushing someone out of the way to obtain a deadly weapon is a legitimate police purpose and does not rise to the level of conduct that would "shock the conscience" so that a due process claim can be established. Moreover, not every push or shove violates the constitution. <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973). Accordingly, Wlock is entitled to summary judgment on Woodrow Snell's claim that the alleged push

by Wlock violated Woodrow Snell's Fourteenth Amendment rights.

##### C.   WLOCK IS ENTITLED TO QUALIFIED IMMUNITY IMMUNITY ON WOODROW SNELL'S CONSTITUTIONAL CLAIMS

State officials are immune from damage claims brought under 42 U.S.C. § 1983 if reasonable officials in their positions could have believed that their actions or decisions were lawful in light of existing law and the information they possessed at the time they acted.  Anderson v. Creighton, 463 U.S. 635 (1987). They are immune unless a reasonable official would have believed that their actions violated clearly established law.  Id.  This qualified immunity serves the social interest of protecting public servants from the time and expense of litigation and the threat of personal monetary liability, which divert officials' energies from the public's business and inhibit them in the discharge of their duties.  Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982).

The Court must evaluate both the facts known to defendants and the law at the time defendants acted.  Anderson, 483 U.S. at 641.  An official does not lose his immunity unless the law existing at the time clearly and obviously proscribed the action that he took.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  An officer loses immunity only if "it is

obvious that no reasonably competent officer would have [taken the action in question]." Id. Officials are immune unless "the law clearly proscribed the actions" that they took. Mitchell v. Forsyth, 472 U.S. 511, 523 (1985).

The Supreme Court stressed that the qualified immunity question must be resolved "at the earliest possible stage in the litigation." Saucier v. Katz, 533 U.S. 194 (2001). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " Id. (quoting Mitchell v. Forsyth, 472 U.S. at 526 (1985)). "The privilege is 'an immunity from suit rather than a mere defense to liability, and like an  absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " Id.

In Saucier,, the Supreme Court held that claims of qualified immunity are to be evaluated using a two-step process.  Id. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation.  Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity.  Id.

If it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim then move to the second step of the analysis to

determine whether the constitutional right was clearly established. Id.  That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?  Id.  The focus in this step is solely upon the law.  Id.  If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity.  Id. at 137.  If the requirements of the law would have been clear, the officer must stand trial.  Id.

Here, a reasonable officer in Wlock's position, with the facts he possessed, would not believe that pushing Woodrow Snell out of the way to obtain a weapon from a possible crime suspect violated clearly established constitutional law.  Equally, a reasonable officer in Wlock's position, with the facts he possessed, would believe that he could move Woodrow Snell out of the way so as to obtain the gun from a possible crime suspect to protect himself or his partner.  Consequently, Wlock is entitled to qualified immunity on Woodrow Snell's constitutional claim for excessive force. Summary judgment, therefore, should be entered in favor of Wlock and against Woodrow Snell.

**D.  SOVEREIGN IMMUNITY BARS WOODROW SNELL'S BATTERY CLAIM**

Woodrow Snell alleges in paragraph 17 of the complaint that Wlock pushed him unnecessarily causing him to strike his leg on an exposed screw of an ice bin. In Count III of the complaint, he

10

claims that such action amounted to a battery.  Such a claim, however, is barred by sovereign immunity.

Article I, § 11 of the Pennsylvania Constitution specifies, in relevant part, "Suits may be brought against the Commonwealth in such manner, in such courts and in such case as the legislature may by law direct."  As the Pennsylvania Supreme Court has explained, "the Framers intended that the legislature have complete control over suits brought against the Commonwealth."  Smith v. City of Philadelphia, 512 Pa. 129, 516 A.2d 306, 309 (1986), appeal dismissed, 479 U.S. 1074 (1987).

The legislature, in turn, has explicitly affirmed the sovereign immunity of the Commonwealth and its officials and employees, except in those instances where immunity is specifically waived by the General Assembly.  1 Pa. C.S.A. § 2310.  Thus, the legislature has proclaimed that "Sovereign immunity is the constitutional rule."  E-Z Parks v. Philadelphia Parking Authority, 110 Pa. Commw. 692, 532 A.2d 1272, 1276 (1987), appeal denied, 546 A.2d 60 (Pa. 1988).  Commonwealth officials acting within the scope of their duties enjoy the same immunity as the Commonwealth itself.  Moore v. Commonwealth, 114 Pa. Commw. 56, 538 A.2d 111, 115 (1988), appeal dismissed, 567 A.2d 1040 (Pa. 1990).  See also LaFrankie v. Miklich, 152 Pa. Commw. 163, 618 A.2d 1145 (1992) (employee of a Commonwealth agency acting within the scope of his or her duties is protected by sovereign immunity from imposition of liability for intentional tort claims.)

11

The Sovereign Immunity Act in Title 42 of the Judicial Code waives the Commonwealth's immunity only in nine narrow categories of negligence:

1.    vehicle liability,

2.    medical-professional liability.

3.    care. custody or control of personal property

4.    a dangerous condition of Commonwealth real estate, highways and sidewalks,

5.    a dangerous condition of Commonwealth highways, particularly potholes or sinkholes,

6.    care, custody or control of animals,

7.    liquor store sales,

8.    National Guard Activities and

9.    toxoid and vaccines.

42 Pa. C.S.A. § 8522(b).

Here, at all times relevant, Wlock was acting within the scope of his duties as Commonwealth employee when he entered the Snell's premises looking for the gun. Woodrow Snell's battery claim is an intentional tort. Sovereign immunity then protects Wlock from the imposition of any liability on any claim that does not fall into one of the nine categories of claims in the which the Pennsylvania has waived its sovereign immunity.  Woodrow Snell's claim is for battery. There is no exception under Pennsylvania's sovereign immunity statute for intentional torts Miller v. Hogeland, No. 00-516, 2000 WL 987864, *3 (E.D.Pa. July 18, 2000); Dill v. Oslick, No. 97-6753, 1999 WL 508675, *4

12

(E.D.Pa. 1999) and his claim does not fall into one of the nine categories of claims in the which the Pennsylvania has waived its sovereign immunity. Sovereign immunity then protects Wlock from the imposition of liability on Woodrow's Snell claim for battery. Accordingly, Wlock is entitled to summary judgment on Woodrow Snell's battery claim.

## IV.    CONCLUSION

Based upon the foregoing, Wlock respectfully requests that his motion be granted.

GERALD J. PAPPERT
ACTING ATTORNEY GENERAL

BY:    s/Randall J. Henzes
Randall J. Henzes
Deputy Attorney General
Identification No. 53256

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2136

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL SNELL AND WOODROW SNELL    :    CIVIL ACTION

                    Plaintiffs    :

            V.                      :

ROBERT J. DUFFY ET AL              :

                    Defendants    :    NO.  02-3660


**CERTIFICATE OF SERVICE**

I, Randall J. Henzes, Deputy Attorney General, hereby certify that on January 9, 2004, Defendant Wlock's Supplemental Response to Plaintiff's Woodrow Snell's Motion for Summary Judgement was filed electronically and is available for viewing and downloading from the ECF system.  I further certify that a true and correct copy of sad document was served on January 9, 2004, by United State mail, first class postage prepaid to:

    J. Michael Considine, Esquire
    12 East Barnard Street
    Suite 100
    West Chester, Pa 19380

                        GERALD J. PAPPERT
                        ACTING ATTORNEY GENERAL


                BY:  s/Randall J. Henzes
                        Randall J. Henzes
                        Deputy Attorney General
                        Identification No. 53256

                        Susan J. Forney
                        Chief Deputy Attorney General
                        Chief, Litigation Section

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603

14

Telephone: (215) 560-2136