IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL SNELL, ET AL., | : | CIVIL ACTION |
| | : | NO. 02-3660 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT DUFFY, ET AL., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                          FEBRUARY   , 2004

Plaintiff Michael Snell has brought this civil rights action alleging, on behalf of his minor son Woodrow Snell, that Pennsylvania State Trooper Jeffrey Wlock violated his son's constitutional right to be free from excessive force by a law enforcement officer.[1]  Because the court concludes that no reasonable jury could find that Trooper Wlock's use of force against Woodrow was objectively unreasonable under the circumstances of this case, the court shall grant the defendant's motion for summary judgment in its entirety.

---

[1] The court has dismissed all of the other claims alleged in plaintiff's complaint.  See Snell v. Duffy, No. 02-3660, 2004 U.S. Dist. LEXIS 520, at *1 (E.D. Pa. Jan. 6, 2004).

I.   FACTUAL BACKGROUND

The relevant facts pertaining to plaintiff Woodrow Snell's excessive force claim are as follows.[2] On November 13, 1999, Pennsylvania State Troopers Robert J. Duffy and Jeffrey Wlock responded to a report that an individual had pointed a gun at three children. The incident was reported by the parents of Tyler and Brian Brady and Zachary Buck, who were neighbors of Michael Snell and his son Woodrow Snell.

At the scene, Trooper Duffy interviewed the alleged victims, the Brady and Buck children, who claimed that Michael Snell had pointed a gun at them on three separate occasions and screamed at them. After inspecting the area where the alleged incident took place, and finding no physical evidence to support the boys' claim, Trooper Duffy interviewed Michael Snell at his home. During the interview, Snell confirmed that he owned a ".22" and that earlier that afternoon he and his son had gone hunting in a field behind the Bradys' home, taking with them that particular gun. Snell also confirmed that he had seen the Brady and Buck children in the backyard as he and his son walked by. Although Trooper Duffy did not reveal the nature of the incident he was investigating, Snell asked him, "Are you here because

---

[2] The facts recited are either undisputed, or if disputed, the court has accepted the plaintiff's version of the facts. All facts are viewed in the light most favorable to the plaintiff, the non-moving party.

somebody pointed an unloaded and unbolted gun at these children."[3]

Trooper Duffy then asked Michael Snell for the gun. Snell proceeded into his shed to get the gun but would not allow Trooper Duffy to enter the shed without a warrant. Despite Snell's refusal to allow the officers to enter the shed, as Snell proceeded to the shed and retrieved the rifle, Trooper Wlock entered the shed behind him,[4] pushed Woodrow Snell aside (who at the time was standing in between Trooper Wlock and Michael Snell), and took the weapon from Michael Snell.

As a result of being pushed by Trooper Wlock, Woodrow Snell fell into an ice bin causing him to be injured on an exposed screw.[5] Wlock left the shed with the gun and turned it over to Trooper Duffy. Troopers Duffy and Wlock then left the scene with Snell's rifle as potential evidence of the commission of a crime.

---

[3] Prior to that statement, Trooper Duffy did tell Snell that the reason he was at the Snell's home was to investigate an incident concerning the neighbors' children and Duffy had asked Snell about his ownership of a gun. See Def's Mot. for Summ. J., Exh. A, Dep. of Michael Snell at 21.

[4] As Trooper Wlock entered the shed, he put his hand on his service revolver.

[5] Plaintiff has attached to his response to defendant's motion for summary judgment an affidavit by Mrs. Mary Ann Snell (the mother of Woodrow Snell) stating that Woodrow Snell bled significantly from the cut received on the ice bin and that Woodrow Snell underwent counseling to deal with the "severe psychological stress" he experienced as a result of the incident.

II.  ANALYSIS

    A.  <u>Standard for Summary Judgment</u>

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  An issue of fact is "genuine" only when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  <u>Id.</u>  In determining whether there exist genuine issues of material fact, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party.  <u>Coregis Ins. Co. v. Baratta & Fenerty, Ltd.</u>, 264 F.3d 302, 305-06 (3d Cir. 2001) (citing <u>Anderson</u>, 477 U.S. at 248).

Although the moving party bears the burden of demonstrating the absence of a genuine issue of material fact, in a case such as this, where the non-moving party is the plaintiff, and therefore, bears the burden of proof at trial, that party must present affirmative evidence sufficient to establish the existence of each element of his case.  <u>Id.</u> at 306 (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Accordingly, a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid the entry of summary judgment, see Celotex, 477 U.S. at 324, but rather, she "must go beyond the pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Service., 214 F.3d 402, 407 (3d Cir. 2000).

   B.   Excessive Force Claim

   Plaintiff alleges that Trooper Wlock's action of pushing Woodrow Snell was not objectively reasonable and that it constituted excessive force under the Fourth Amendment.[6] The Supreme Court has held that all claims that law enforcement officers have used excessive force are to be analyzed under the Fourth Amendment "reasonableness" standard. See Graham v. Connor, 490 U.S. 386, 394-95 (1989). Thus, plaintiff's excessive force claim is properly analyzed under the Fourth Amendment, rather than the Fourteenth Amendment. Id.

   In assessing plaintiff's excessive force claim under the Fourth Amendment, the issue is "whether the [officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. The

---

[6] See Pl's Resp. to Def.'s Mot. for Summ. J. at 6-7, 10-11.

test for objective reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; Shararr v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), cert. denied, 414 U.S. 1033 (1973)).

The Court's assessment of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Id. at 396-97.  Thus, the reasonableness inquiry is an objective one, judging "from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight."  Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002).  In the instant case, the court must address whether a reasonable jury could find that Trooper Wlock's use of force against Woodrow Snell was objectively reasonable.

The plaintiff has produced the following evidence that Trooper Wlock used excessive force:  Troopers Duffy and Wlock

were at the home of Michael Snell investigating a report that Snell had pointed a gun at three children.  Snell admitted that he had a rifle and went into his shed to get it.  He would not let the officers enter the shed without a warrant.  Although Michael Snell had told the Troopers that the gun was not loaded, Trooper Wlock entered the shed (putting his hand on his service revolver) and forcefully pushed Woodrow Snell aside in order to take the rifle from Michael Snell.  At the time Woodrow Snell was pushed, he was standing between Trooper Wlock and Michael Snell.[7]  As a result of the push, Woodrow Snell fell against an ice bin and received a cut that bled significantly.[8]

       Firstly, defendant argues that summary judgment is appropriate because, even under plaintiff's version of the facts, Woodrow Snell was not "seized," i.e. his liberty was not deprived.  In order to establish a claim for excessive force under the Fourth Amendment, a plaintiff must show that a seizure occurred.  <u>Curley</u>, 298 F.3d at 279.  Within the meaning of the Fourth Amendment, a "seizure" occurs only when state actors have "by means of physical force or show of authority . . . in some way restrained the liberty of a citizen." <u>See</u> Graham, 490 U.S. at 395 n.10 (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968)).

---

[7] Pl's Resp. to Def.'s Mot. for Summ. J. at 3.

[8] Def's Mot. for Summ. J., Exh. A, Dep. of Michael Snell at 16-21.

Plaintiff contends that Trooper Wlock's action of placing his hand on his gun as he pushed Woodrow Snell out of his way was a "show of authority" which, under the circumstances, left both he and his son Woodrow feeling as if they were not free to leave the shed.  Viewing the facts in the light most favorable to plaintiff, the court will accept plaintiff's view that under those circumstances a Fourth Amendment seizure occurred.

   Even assuming that a seizure of Woodrow Snell occurred, however, the court finds that no reasonable jury looking at all the circumstances of this case could find that the force used by Trooper Wlock to take the weapon from Michael Snell, and which incidentally caused Woodrow Snell to fall against the ice bin, was objectively unreasonable.  In the context of investigating the crimes of assault, harassment, and recklessly endangering another person, involving a rifle allegedly being pointed at children by Michael Snell, Trooper Wlock was required to render a split-second judgment to use the necessary force to secure a potentially loaded firearm, by taking the firearm directly from Michael Snell rather than allowing Michael Snell to retrieve the firearm from the shed unattended.  At the time he made the decision to secure the firearm, Trooper Wlock did not know, nor did he have a way of knowing, if indeed the firearm was loaded or unloaded, or what if any action Michael Snell might take if allowed to proceed to retrieve the firearm unattended.  Under the

circumstances of this case, that, in the process of taking steps to secure the firearm for his own safety (and that of Trooper Duffy), Trooper Wlock pushed Woodrow Snell (who at the time was standing between Trooper Wlock and Michael Snell) and that, incidental to that push, Woodrow Snell fell against the ice bin, do not undermine the reasonableness of Trooper Wlock's calculus in attempting to secure the firearm.  See Graham, 490 U.S. at 396 (recognizing that "whether the suspect poses and immediate threat to the safety of the officers or others" is to be paid careful attention by the court in determining objective reasonableness).[9] Accordingly, Trooper Wlock is entitled to summary judgment on plaintiff's constitutional claim of excessive force.

CONCLUSION

For the foregoing reasons, defendant Wlock's motion for summary judgment as to Count III is granted.

An appropriate order follows.

---

[9] The instant case is distinguishable from Dunn v. Village of Put-In-Bay, 291 F. Supp. 2d 647, 651 (N.D. Ohio 2003), a case in which a district court denied the police officers' motion for summary judgment because, under the plaintiff's version of facts, at the time the officers used force, he posed no threat to the officers and was not resisting arrest.  In this case, under plaintiff's version of the facts, at the time Woodrow Snell was pushed, he was standing in front of Michael Snell (who was holding a potentially loaded firearm).

```
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MICHAEL SNELL, ET AL.,          :     CIVIL ACTION
                                :     NO. 02-3660
          Plaintiffs,           :
                                :
     v.                         :
                                :
ROBERT DUFFY, ET AL.,           :
                                :
          Defendants.           :
```

ORDER

**AND NOW**, this **__th** day of **February, 2004**, it is hereby **ORDERED** that defendant's motion for summary judgment (doc. no. 24) as to Count III of plaintiff's complaint is **GRANTED**.[1]


**AND IT IS SO ORDERED.**

                                                 **EDUARDO C. ROBRENO, J.**

---

[1] Counts I, II, IV, and V of plaintiff's complaint were previously dismissed. Count III is the only count remaining.